**\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\***

**Electronically Filed
Supreme Court
SCWC-18-0000057
26-AUG-2025
07:52 AM
Dkt. 40 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

KE KAUHULU O MĀNĀ, AN UNINCORPORATED ASSOCIATION; HAWAI'I
ALLIANCE FOR PROGRESSIVE ACTION, A NON-PROFIT CORPORATION;
SURFRIDER FOUNDATION, A NON-PROFIT CORPORATION; KOHOLĀ LEO, A
NON-PROFIT CORPORATION; PUNOHU KEKAUALUA III,
Petitioners/Plaintiffs-Appellants/Cross-Appellees,

vs.

BOARD OF LAND AND NATURAL RESOURCES, STATE OF HAWAI'I,
Respondent/Defendant-Appellee/Cross-Appellee,

and

SYNGENTA SEEDS, LLC, A LIMITED LIABILITY COMPANY,
SYNGENTA HAWAII, LLC, A LIMITED LIABILITY COMPANY,
Respondents/Defendants-Appellees/Counterclaim-Appellants.

_____

SCWC-18-0000057

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000057; CASE NO. 5CC171000094)

AUGUST 26, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, and DEVENS, JJ., and
CIRCUIT JUDGE HAMMAN, IN PLACE OF GINOZA, J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

This case arises out of the Board of Land and Natural Resources' ("BLNR") decision to exempt Syngenta Hawaii, LLC, from preparing an environmental assessment ("EA") for its seed research operation on state land.  Hawai'i Revised Statutes ("HRS") Chapter 343, the Hawai'i Environmental Policy Act ("HEPA"), requires EAs for actions proposing use of state lands, unless exempted.

In 2017, when BLNR issued a new revocable permit ("RP") to Syngenta Hawai'i, LLC, it declared an EA was not required because the land's usage was not being changed and because there was minimal or no significant effect on the environment.  In so determining, BLNR referred to its 1982 approval of a conservation district use permit ("CDUP") for which a "finding of no significant impact" ("FONSI") had issued.

But the 1982 CDUP and FONSI had been based on use of the land for sugar cane cultivation.  BLNR had not analyzed possible environmental impacts of a seed research operation involving the use of restricted use pesticides ("RUPs") and genetically modified organisms ("GMOs").

Ke Kauhulu o Mānā and others (collectively referred to as "Ke Kauhulu") challenged BLNR's 2017 EA exemption declaration in the Environmental Court of the Fifth Circuit ("environmental

1

court"). The environmental court[1] upheld the exemption declaration and granted summary judgment in favor of Syngenta and BLNR.

On appeal, the Intermediate Court of Appeals ("ICA") ruled in relevant part that issues of fact as well as gaps in BLNR's record precluded summary judgment. The ICA ordered a remand to the environmental court for it to readdress the EA exemption declaration.

On certiorari, Ke Kauhulu argues the ICA erred when it ordered a remand instead of determining that an EA was required as a matter of law.

We agree with Ke Kauhulu and hold that (1) whether an agency has "followed proper procedures" or "considered appropriate factors" in declaring an EA exemption are questions of law reviewed de novo; and (2) because BLNR did not "follow proper procedures" or "consider appropriate factors" in its 2017 EA exemption declaration, an EA is required as a matter of law. Therefore, the ICA should not have ordered a remand for the environmental court to readdress the EA exemption declaration.

Instead, we order a remand to the environmental court for further proceedings consistent with this opinion, which includes

---

[1] The Honorable Randal G.B. Valenciano presided.

requiring the BLNR to prepare an EA regarding possible environmental impacts from use of the land for seed research.

## II.  Background

### A.  Factual and pre-litigation background

The following background shows that BLNR never analyzed the potential environmental impacts of using state conservation land for seed research operations.

#### 1.  The land

The land involved is within TMK (4) 1-2-002:040 in Kekaha, Waimea, Kaua'i, in a state-owned conservation district.  It consists of approximately 132 acres located about 400 feet from the ocean; about half of that acreage is involved here.

#### 2.  1982 CDUP and FONSI

In 1981, Kekaha Sugar Company ("Kekaha Sugar") applied for a CDUP to use sixty-two acres of the land for "[f]arming operation[s] necessary to raise sugar cane."  In late 1981, BLNR held a public hearing on the application.  At the hearing, Kekaha Sugar said it proposed to use the land to "raise cane" and for "sugar cane cultivation[.]"  Kekaha Sugar also said that Pride Company, Inc. ("Pride"), which was not included in its original application, would use a portion of the land for seed research.

This proposed use of state land triggered HEPA environmental review requirements.

In January 1982, BLNR published a negative declaration with a FONSI.  The negative declaration only referred to Kekaha Sugar's proposed sugar cane cultivation use and did not mention Pride's proposed seed research operation:

> NEGATIVE DECLARATIONS
>
> The following are Negative Declarations or determinations made by proposing or approving agencies that certain proposed actions will not have significant effects on the environment[2] and therefore do not require [Environmental Impact Statement ("EIS")] . . . .
>
> KAUAI
>
> CONSERVATION DISTRICT USE APPLICATION FOR COMMERCIAL AGRICULTURAL USE, KEKAHA, KAUAI,
> Kekaha Sugar Company, Ltd./Dept. of Land and Natural Resources
>
> The applicant proposes to clear brush from the land and improve the sandy soil for the purpose of raising sugar cane.  This would be done by incorporating mud press, settling basin mud and cane trash.  The area, when planted with cane, will be irrigated by either an overhead or a drip irrigation system and will be incorporated into the adjacent cane field system.  The entire parcel consists of 132.5 acres, of which 62 acres are proposed for use.  The parcel is located between a racing drag strip and cane and corn farming operations, TMK:4-1-02:40.

In 1982, BLNR approved the CDUP.  In 1983, BLNR issued two RPs pursuant to HRS § 171-55.[3]  RP S-5966 was issued to Kekaha

---

[2]    "If the agency determines that there will be no significant environmental impact, it issues a [FONSI], allowing the project to proceed without further study, although a FONSI determination may be challenged." See Kilakila ʻO Haleakala v. Univ. of Haw., 138 Hawaiʻi 364, 371, 382 P.3d 176, 183 (2016) (explaining that if an "agency determines that the proposed action will not result in a significant environmental impact, then the agency must issue and publish a [FONSI] (i.e., a negative declaration) . . . prior to implementing or approving the action.").

[3]    HRS § 171-55 (2011) states in relevant part:

> Notwithstanding any other law to the contrary, the board of land and natural resources may issue permits for the

4

Sugar regarding use of 17.6 acres for "cane seed cultivation." RP S-5983 was issued to Pride regarding use of 43.6 acres for "corn seed cultivation."

### 3. Assignments and name changes before 2017

In 1993, BLNR consented to the assignment of RP S-5983 from Pride to Northrup King, Co., which later changed its name to Novartis Seeds, Inc. In 2000, BLNR approved another name change from Novartis Seeds, Inc., to Syngenta Seeds, Inc.

In early 2001, Kekaha Sugar surrendered RP S-5966 regarding the other 17.6 acres. In 2007, the Agribusiness Development Corporation ("ADC"), which thought it had control over the 17.6 acres, licensed them to Syngenta Seeds, Inc., which then began using the entire 61.2 acres—-43.6 acres under RP S-5983 and 17.6 acres under the ADC licensing agreement.

In 2015, Syngenta Seeds, Inc., converted from a Delaware corporation to a Delaware limited liability company named Syngenta Seeds, LLC ("Syngenta Seeds"), which then formed a

---

temporary occupancy of state lands or an interest therein on a month-to-month basis by direct negotiation without public auction, under conditions and rent which will serve the best interests of the State, subject, however, to those restrictions as may from time to time be expressly imposed by the board. A permit on a month-to-month basis may continue for a period not to exceed one year from the date of its issuance; provided that the board may allow the permit to continue on a month-to-month basis for additional one year periods.

wholly-owned subsidiary, Syngenta Hawaii, LLC ("Syngenta Hawaii").

### 4.    2017 RP to Syngenta Hawaii

In early 2017, Syngenta Seeds filed an application seeking a name change on RP S-5983 to Syngenta Hawaii. During its review of the application, Department of Land and Natural Resources ("DLNR") staff realized that RP S-5983 only covered 43.6 acres, although Syngenta Seeds had been using the full 61.2 acres. The other 17.6 acres was being used under Syngenta Seeds' licensing agreement with the ADC, which did not control the parcel. Therefore, DLNR recommended that, along with the name change, BLNR issue a new RP for the entire 61.2 acres approved under the 1982 CDUP. DLNR indicated there would be no change in operations, but that under existing regulations, RPs were not assignable.

DLNR also recommended that the new RP to Syngenta Hawaii be deemed exempt from HEPA:

> RECOMMENDATION: That the [BLNR]:
>
> 1. Declare that, after considering the potential effects of the proposed disposition as provided by Chapter 343, HRS, and Chapter 11-200, [HAR], **this project will probably have minimal or no significant effect on the environment** and is therefore exempt from the preparation of an [EA].

BLNR staff said the parcel had been in "agricultural use for decades," resulting in "no known significant environmental impacts" and "the proposed issuance of a revocable permit for

6

the same use to a new entity would involve negligible or no expansion or change in use of the subject area beyond that previously existing."

BLNR's HEPA analysis referred back to the 1982 FONSI, which had never analyzed possible environmental impacts of a seed research operation:

> CHAPTER 343 – ENVIRONMENTAL ASSESSMENT:
>
> > [T]he subject request is exempt from the preparation of an [EA] pursuant to Exemption Class No. 1. See Exemption Declaration ["Exemption Notification"] attached as Exhibit B.
> >
> > Additionally, [CDUP] No. KA-11/9/81-1380 to Kekaha Sugar Company, Ltd. and Pride Company, Inc. was approved by [BLNR] at its meeting on April 8, 1982, Item H-4.

And according to Exhibit B:

> In accordance with Hawaii Administrative Rule Section 11-200-8 and the Exemption List for the Department of Land and Natural Resources concurred with by the Environmental Council and dated June 5, 2015, the subject request is exempt from the preparation of an environmental assessment pursuant to Exemption Class No. 1, Item 51, which states the "Permits, licenses, registrations, and rights-of-entry issued by the Department that are routine in nature, involving negligible impacts beyond that previously existing[].["]

In preparing the exemption recommendation, DLNR staff indicated they consulted with several other state agencies: the Department of Hawaiian Homelands ("DHHL"), Department of Agriculture ("DOA"), ADC, Office of Hawaiian Affairs ("OHA"), and the Kauaʻi County Planning Office. The record does not reflect that DLNR consulted the Department of Health ("DOH").

BLNR unanimously approved DLNR's recommendations.  It approved a name change from Syngenta Seeds, LLC, to Syngenta Hawaii, included the entire 61.2 acres in a new RP, and declared the new RP exempt from preparation of an EA.

## B.    Environmental court proceedings

### 1.    Complaint

On June 13, 2017, Ke Kauhulu filed a complaint in the environmental court.  Ke Kauhulu named BLNR, Syngenta Seeds and Syngenta Hawaii as defendants (Syngenta Seeds and Syngenta Hawaii are sometimes collectively referred to as "Syngenta").[4] Relevant to this certiorari proceeding, Ke Kauhulu claimed BLNR violated HEPA by failing to prepare an EA for the proposed action.[5]

---

[4]     At oral argument, Syngenta's counsel argued for the first time that the case was moot and should be dismissed because there was a new permittee, Hartung Brothers Hawaii, LLC ("Hartung").  In early 2017, BLNR knew that Syngenta Hawaii was trying to sell its Hawai'i operations and that unless the sale was through an equity transfer, the buyer would have to apply for a new RP.  Hartung then purchased the equity interest in Syngenta Hawaii before June 29, 2017, and the permittee's name was changed to Hartung on that date. Later RPs have apparently been issued in Hartung's name, but this lawsuit continued to be defended in Syngenta's name with no motion to dismiss or add or substitute Hartung as a party.  Syngenta's counsel orally moved for a mootness dismissal based on his understanding that mootness is an issue of subject matter jurisdiction.  But mootness is a prudential issue, not a subject matter jurisdiction issue.  State v. Hewitt, 153 Hawai'i 33, 42, 526 P.3d 558, 567 (2023).  In any event, Hartung continues the seed research operation and the "capable of repetition, yet evading review" and public interest exceptions to the mootness doctrine would apply here.  See Carmichael v. Bd. of Land & Nat. Res., 150 Hawai'i 547, 560, 506 P.3d 211, 224 (2022).  We therefore reject the untimely oral motion to dismiss.

[5]     Ke Kauhulu also alleged BLNR failed to enforce conservation district laws under HRS chapter 183C and violated the public trust doctrine of Article XI, Section 1 of the Hawai'i Constitution.  Because the HEPA issues are dispositive, we need not and do not address these other issues.

8

### 2. Motions for summary judgment

In August 2017, Ke Kauhulu and Syngenta filed competing motions for summary judgment ("MSJ"). BLNR joined Syngenta's motion in part.[6]

The only issue before this court is whether the ICA should have ordered a remand to the environmental court for it to readdress whether an EA exemption was properly declared. Thus, only the arguments relevant to this issue are discussed.

### a. Ke Kauhulu's arguments

Ke Kauhulu argued BLNR's finding of an exemption was invalid and violated HEPA. BLNR had said there were no significant effects by noting that the parcel had been "in agricultural use for many decades" and that such use had resulted in "no known significant impacts to the natural and environmental resources in the area." Ke Kauhulu argued that this was not the proper legal standard; rather, BLNR needed to take a "hard look" at environmental factors, consider foreseeable direct and indirect impacts, and discuss adverse impacts.

---

[6]     BLNR joined Syngenta's MSJ only "as to the result sought therein."

Ke Kauhulu argued that BLNR was required to look beyond the action's facial compliance with an exemption class, and to also determine that the activity will probably not have a significant effect – which it failed to do here.  Ke Kauhulu further argued that BLNR's reliance on Kekaha Sugar's 1982 CDUP as part of its HEPA assessment did not constitute a "hard look" because the 1982 FONSI was issued only for soil improvements, clearing brush, and raising sugar cane – not the impacts of Syngenta's proposed action, including use of RUPs and cultivation of GMOs.

Ke Kauhulu also asserted that cumulative impacts of successive actions at the parcel, over several decades, were significant and rendered the exemption improper.  According to Ke Kauhulu, the parcel includes and is near a critical habitat for endangered or threatened species and contains important natural resources essential to the preservation of natural ecosystems and sustainability of the water supply.  Ke Kauhulu further argued that without any environmental disclosure documents or other proper assessments, BLNR was not sufficiently informed of Syngenta's pesticide use on the parcel.

Ke Kauhulu also asserted that BLNR failed to comply with exemption consultation requirements.  According to HAR § 11-200-8, BLNR is required to obtain the advice of other outside agencies having jurisdiction or expertise, Ke Kauhulu asserted. Ke Kauhulu further pointed out that BLNR's exemption

10

notification did not list the DOH as a consulted party despite DOH being the agency that reviews Syngenta's GMO permits.

### b.    Syngenta's arguments

Syngenta argued the only reason for the new RP was for a name change and to clarify which arm of the state manages the property.  Syngenta maintained that BLNR's exemption complied with HEPA.  It contended the new RP was exempt because maintaining the existing use "fits squarely within [an] exemption class . . . and its issuance [would] have no significant environmental effect, either individually or cumulatively."

As to Ke Kauhulu's argument that BLNR should have consulted DOH, Syngenta argued BLNR was not required to do so.  It posited that BLNR consulted the DOA and the National Resource Conservation Service, both of which have expertise over RUPs and GMOs.

### c.    BLNR's arguments

BLNR argued that whether a HEPA exemption applies is a mixed question of law and fact.  BLNR argued that "judicial review of the propriety of a given exemption should be narrowly tailored to the specific project at issue[.]"

### 3.    Ruling on MSJs

On November 9, 2017, the environmental court held a hearing on the parties' MSJs.

As to the HEPA exemption, the environmental court stated:

> THE COURT:
>
> [W]hen you look at the exemption section, whether it's 11-200-8 – if you look at the first one and even the exemption cited by Syngenta, it refers to existing use, and so those are exempt activities, existing use. So because of that, what the Court is doing is the Court is granting the motion to dismiss, [Syngenta's] motion to dismiss, and denying [Ke Kauhulu's] [MSJ].

On December 20, 2017, the environmental court entered its order granting Syngenta's and denying Ke Kauhulu's MSJ. On January 10, 2018, final judgment was entered.

**C.  ICA proceedings**

On January 31, 2018, Ke Kauhulu appealed. On February 13, 2018, Syngenta cross-appealed. With respect to the EA exemption issue, the parties repeated their arguments from below.

On April 30, 2024, the ICA issued its memorandum opinion. Ke Kauhulu O Mānā v. Bd. of Land & Nat. Res., No. CAAP-18-0000057, 2024 WL 1886115 (Haw. App. Apr. 30, 2024) (mem. op.).

The ICA reviewed the environmental court's analysis of whether an EA was required for the 2017 Syngenta Hawaii RP. Ke Kauhulu O Mānā, 2024 WL 1886115, at *1. The ICA cited to Umberger v. Department of Land & Natural Resources, 140 Hawai'i 500, 403 P.3d 277 (2017), which held that under HEPA, an EA is required if: (1) the proposed activity is an "action" under HRS

12

§ 343-2 (2010); (2) the action proposes one or more of the nine categories of land uses or administrative acts enumerated in HRS § 343-5(a) (2010); and (3) the action is not exempt pursuant to HRS § 343-6(a)(2)(2010). Umberger, 140 Hawai'i at 512, 400 P.3d at 289.

The ICA determined that the first two Umberger conditions requiring an EA were met. Ke Kauhulu O Mānā, 2024 WL 1886115, at *8-9.[7] These ICA holdings are not challenged on certiorari.

Thus, the only issues on certiorari concern the ICA's holding regarding the third Umberger condition, as to whether the 2017 RP to Syngenta was properly declared exempt from preparation of an EA.

Regarding the BLNR's exemption declaration, the ICA pointed out that Umberger further outlines four steps an agency must consider in determining whether an exemption applies:

---

[7]     For the first condition, which examines whether the proposed activity is an "action" under HRS § 343-2, the ICA pointed out that the new RP allowed a new entity, Syngenta Hawaii, to occupy the parcel to engage in a "project" or "program" of commercial agriculture to earn a profit. The ICA determined Syngenta Hawaii's permitted activity is a "project" and a "program" because it "facilitated a deliberate and coordinated effort" to use the property for commercial agricultural purposes and involved a "plan or system" to use the parcel with the "goal" to earn profit. The ICA thus determined that the environmental court's finding that the proposed activity under the new RP was an "action" subject to HEPA review was correct.

For the second condition, which lists nine categories of land or administrative uses that trigger environmental review, the ICA stated that the record reflected that Syngenta Hawaii was a new applicant for a new RP. Thus, Syngenta Hawaii was a new applicant proposing an "action" under a new RP for the use of state lands under HRS § 343-5(a)(1). Therefore, the ICA determined the environmental court erred by concluding that the second condition was not met.

> [A]n action is exempt from HEPA if (1) it is within an exempt class promulgated by the Environmental Council in HAR § 11-200-8(a) or within an exemption category created by the agency itself pursuant to its authority under HAR § 11-200-8(d); (2) the relevant exemption category can be applied because the activity does not have a significant cumulative impact and it does not have a significant impact on a particularly sensitive environment, see HAR § 11-200-8(b); (3) the agency obtained the advice of other agencies or individuals having jurisdiction or expertise as to the propriety of the exemption, HAR § 11-200-8(a); and (4) the action will probably have minimal or no significant effects on the environment, HRS § 343-6(a)(2); see also HAR § 11-200-8(d); Sierra Club, 115 Hawai'i at 315-16, 167 P.3d at 308-09 (emphasis added).

Ke Kauhulu O Mānā, 2024 WL 1886115, at \*10 (citing Umberger, 140 Hawai'i at 524, 403 P.3d at 301).

The ICA discussed the exemption at issue here regarding "minimal or no significant effect":

> HAR § 11-200-8(a) (repealed 2019), established "Exempt Classes of Action" as follows:
>
>> (a) Chapter 343, HRS, states that a list of classes of actions shall be drawn up which, because they will probably have minimal or no significant effect on the environment, may be declared exempt by the proposing agency or approving agency from the preparation of an [EA] provided that agencies declaring an action exempt under this section shall obtain the advice of other outside agencies or individuals having jurisdiction or expertise as to the propriety of the exemption. Actions declared exempt from the preparation of an [EA] under this section are not exempt from complying with any other applicable statute or rule . . . .
>
> DLNR's exemption list under HAR § 11-200-8(a) included Exemption Class No. 1, Item 51, which exempted: "Permits, licenses, registrations, and rights-of-entry issued by the [DLNR] that are routine in nature, involving negligible impacts beyond that previously existing." The Environmental Court concluded that because the exemption at issue here "refers to existing use," it applied to Syngenta Hawai'i.

Ke Kauhulu O Mānā, 2024 WL 1886115, at \*9 (cleaned up; emphases in original).

The ICA ruled there was a material factual dispute as to HAR § 11-200-8(a)'s requirement that the action be one with "minimal or no significant effect on the environment." Ke Kauhulu O Mānā, 2024 WL 1886115, at *11. The ICA also deemed the record insufficient to support the 2017 exemption determination because it neither detailed Syngenta's proposed activity under the new RP nor whether the previously permitted activity was similar to the "raising sugar cane" activity addressed in the 1982 FONSI. Ke Kauhulu O Mānā, 2024 WL 1886115, at *11.

The ICA determined these questions constituted genuine issues of material fact that precluded summary judgment. The ICA vacated the environmental court's judgment in favor of Syngenta and remanded for further proceedings consistent with its memorandum opinion. Ke Kauhulu O Mānā, 2024 WL 1886115, at *11.

D.   Issue on certiorari

On certiorari, Ke Kauhulu asserts that the ICA erred when it ordered a remand "for trial" instead of determining that, as a matter of law, an exemption to the EA could not be found to apply.

### III. Discussion

A.   **Whether an agency has "followed proper procedures" or "considered appropriate factors" in declaring an EA exemption are questions of law reviewed de novo**

We first address the standard of review applicable to the EA exemption declared by BLNR.

This court discussed the standard of review for EA exemptions in <u>Sierra Club v. Department of Transportation</u>, 115 Hawai'i 299, 167 P.3d 292 (2007) ("<u>Superferry I</u>"); we determined that the appropriate standard of review depends on the question under consideration. But whether an agency has "followed proper procedures" or "considered appropriate factors" are questions of law reviewed <u>de novo</u>:

> HEPA does not provide direct guidance as to what standards of review should apply to an agency's determination that a project is exempt from the preparation of an EA. Therefore, this court must decide which standard of review to apply. Based on this review of the statutory framework and our caselaw, we conclude that the appropriate standard of review depends on the specific question under consideration. In general, agency exemption determinations that involve factual questions should be reviewed under a clearly erroneous standard . . . . However, as discussed below, **whether or not an agency has followed proper procedures or considered the appropriate factors in making its determination is a question of law, and will be reviewed <u>de novo</u>**.

<u>Superferry I</u>, 115 Hawai'i at 314–15, 167 P.3d at 307–08 (emphasis added).

Thus, where an agency's EA exemption declaration raises questions regarding whether the agency "followed proper procedures" or "considered appropriate factors," those questions will be reviewed <u>de novo</u>.

**B. Because BLNR did not follow proper procedures or consider appropriate factors in its 2017 EA exemption declaration, an EA is required as a matter of law**

16

1.   **BLNR did not follow proper procedures in its 2017 exemption declaration**

Whether BLNR "followed proper procedures" in declaring an EA exemption for Syngenta Hawaii's 2017 RP is a question of law reviewed de novo.

The ICA correctly deemed the record insufficient to support the 2017 exemption's determination that there was no expansion or change in use of the subject area. The ICA also correctly determined that the record did not establish whether Syngenta's seed research operation was similar to the "raising sugar cane" activity included in the 1982 FONSI.

With respect to "proper procedures," however, HEPA "places the burden of compiling information on the agency so that the public and interested government departments can conveniently monitor and criticize the agency's action." Kia'i Wai o Wai'ale'ale v. Dep't of Water, 151 Hawai'i 442, 461, 517 P.3d 725, 744 (2022). Therefore, while a challenger of an agency's environmental review process may present extra-record evidence, allowance of such evidence in HEPA cases "is not a two-way street"; an agency cannot rely on extra-record evidence as a substitute for the analysis it should have included in its record. Kia'i Wai, 151 Hawai'i at 460, 517 P.3d at 743.

In other words, an agency's existing record must include the information justifying its exemption declaration. Here, as correctly determined by the ICA, the record was insufficient. Therefore, BLNR did not "follow proper procedures" in its exemption declaration.[8]

### 2.   BLNR also did not consider appropriate factors in its 2017 exemption declaration

Whether BLNR "considered appropriate factors" in declaring an EA exemption is also a question of law reviewed de novo.

BLNR's record also does not show it "considered appropriate factors" in declaring an EA exemption. With respect to EA exemptions, the agency declaring the exemption must determine that the action will probably have minimal or no significant effects on the environment, not merely that it fits an exemption category. Superferry I, 115 Hawaiʻi at 316, 167 P.3d at 309.

Here, the ICA correctly determined there were material disputes as to HAR § 11-200-8(a)'s requirement that the action be one with "minimal or no significant effect on the environment." Issues of fact exist because BLNR never compiled information regarding possible environmental impacts of the seed research operation. But an agency is required to take a "hard

---

[8]   Although not necessary to our decision, it also appears, as argued by Ke Kauhulu, that the BLNR did not satisfy the third Umberger factor, which requires that the agency obtain the advice of other agencies having jurisdiction or expertise as to the propriety of the exemption. The record does not indicate BLNR consulted the DOH, which reviews Syngenta's GMO permits.

look" at environmental factors before declaring an EA exemption based on a FONSI.  Superferry I, 115 Hawai'i at 335, 167 P.3d at 342.

As a challenger of BLNR's environmental review process, Ke Kauhulu presented various possible environmental effects, listed above, from the use of RUPs and GMOs in seed research operations.  Yet, the original FONSI which BLNR relied upon in declaring Syngenta's 2017 RP exempt from the EA requirement dealt only with sugar cane cultivation and never addressed any possible environmental effects of seed research operations.

Therefore, the questions of fact discerned by the ICA actually establish BLNR's failure to take a "hard look" and to consider appropriate factors in its EA exemption declaration.

3. **An EA is required as a matter of law so a remand should not have been ordered for the environmental court to readdress the exemption declaration**

Because BLNR's failure to follow proper procedures and consider appropriate factors before issuing its exemption declaration are questions of law, the ICA erred by ordering a remand based on the existence of factual questions.

In this regard, we note that this case is distinguishable from Umberger, 140 Hawai'i 500, 403 P.3d 277, and Carmichael v. Bd. of Land & Nat. Res., 150 Hawai'i 547, 506 P.3d 211 (2022), in which we ordered remands to determine whether EA exemptions

19

could apply. Those cases involved determinations of whether HEPA applies in the first instance, not whether an agency improperly declared an EA exemption based on a FONSI.

In Umberger and Carmichael, BLNR had incorrectly assumed that HEPA did not apply to the activities at issue. In Umberger, we held that HEPA applies to commercial aquarium permits. 140 Hawai'i at 504, 403 P.3d at 281. In Carmichael, we held that HEPA applies to revocable water rights permits. 150 Hawai'i at 553, 506 P.3d at 217. As BLNR had never addressed whether EA exemptions might apply, we ordered remands for BLNR to initially address the issue. Umberger, 140 Hawai'i at 504-05, 403 P.3d at 278; Carmichael, 150 Hawai'i at 571, 506 P.3d at 235.

In contrast, in this case, BLNR has recognized from the outset that use of this state conservation land is subject to HEPA. But it declared the use exempt from an EA requirement. This case is therefore comparable to Superferry I, in which the State Department of Transportation ("DOT") recognized the applicability of HEPA but improperly declared an EA exemption for harbor improvements. 115 Hawai'i at 310, 167 P.3d at 303.

In Superferry I, we set out the standards for reviewing EA exemption declarations discussed in Section III.A above. Applying those standards, we held that where DOT's record indicated it did not consider whether the action would have

20

minimal or no significant environmental impact, the EA exemption declaration was erroneous as a matter of law, and that an EA must be prepared. 115 Hawai'i at 335, 167 P.3d at 342.

The ICA should therefore have likewise ordered that an EA be prepared. Instead, it ordered a remand. In that regard, we disagree with Ke Kauhulu's assertion on certiorari that the ICA remanded the matter "for trial." Instead, the ICA ordered a remand for further proceedings consistent with its opinion, which was for the environmental court to reassess the propriety of BLNR's EA exemption declaration.

But this remand order may very well have led to discovery on the issues identified by the ICA, which would have been improper here. To reiterate, while Ke Kauhulu was allowed to present extra-record evidence to identify problems with the environmental review process, including possible environmental impacts, as a matter of law, BLNR could not rely on extra-record evidence as a substitute for the analysis it should have conducted and included in its original agency record. The legitimacy of BLNR's exemption declaration was required to be clear from BLNR's existing record. Therefore, the ICA's remand order might have allowed discovery on remand, which would have been improper under the circumstances here.

At bottom, as the problems with BLNR's exemption determinaton were matters of law, the ICA erred by remanding

21

this case to the environmental court without requiring the environmental court to order the BLNR to prepare an EA regarding possible environmental impacts.  The applicability of an EA exemption was not clear from BLNR's existing agency record.  So, the BLNR failed to meet its burden, and an EA was required as a matter of law.

## IV.   Conclusion

For these reasons, we vacate the ICA's May 31, 2024, judgment on appeal as well as the environmental court's (1) December 20, 2017, "Order Granting Syngenta Seeds, LLC and Syngenta Hawaii, LLC's Motion to Dismiss Complaint or, in the Alternative, for Summary Judgment Filed on August 3, 2017; Order Denying Plaintiffs' Motion for Summary Judgment Filed August 9, 2017"; and (2) January 10, 2018, Final Judgment.

We remand to the environmental court for further proceedings consistent with this opinion, which includes requiring the BLNR to prepare an EA regarding possible environmental impacts from use of the land for seed research operations.

Lance D. Collins and                /s/ Mark E. Recktenwald
Bianca Isaki for

22

petitioners                          /s/ Sabrina S. McKenna

Ewan C. Rayner,                      /s/ Todd W. Eddins
Deputy Solicitor General
for respondent Board of Land         /s/ Vladimir P. Devens
and Natural Resources,
State of Hawai'i                     /s/ Kirstin M. Hamman

Paul Alston and Timothy
H. Irons, for respondents
Syngenta Seeds, LLC
and Syngenta Hawaii, LLC

